# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY KELLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 19 C 758 |
| | ) | |
| MAILFINANCE INC., and NEOPOST USA INC. | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, DISTRICT JUDGE:**

Before the Court is Defendants MailFinance Inc. ("MailFinance") and Neopost USA Inc.'s ("Neopost") (collectively, "Defendants") motion to transfer venue to the District of Connecticut under 28 U.S.C. § 1404(a). The Defendants alternatively move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(3). For the following reasons, the Court grants Defendants' motion to transfer and denies as moot the motion to dismiss.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiffs are the trustees of a multiemployer benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C §§ 1002(3) and (37A), who maintain offices and conduct business in this district (collectively, "the Fund"). The Fund has its principal office in Chicago, Illinois. Defendant MailFinance is a California corporation with its principal place of business in Milford, Connecticut. Defendant Neopost is a Delaware corporation and has its principal place of business in Milford, Connecticut. Defendants both are registered to do business in Illinois.

To meet its obligations under ERISA, the Fund shares administrative expenses with the Service Employees International Union Healthcare IL Pension Fund ("Pension Fund"), and the SEIU Healthcare IL Home Care and Child Care Fund ("Home Care Fund") (collectively, "SEIU Funds"). In August 2017, the Fund contracted with Defendants to help the SEIU Funds meet their mailing and printing logistical needs. The contract included a hardware component, in which the Fund would lease a mailing and postage machine from Defendants, and a customized software component. The software was to be integrated into the hardware component and provided various sorting, double-sided printing, and mail-merging benefits. Defendants estimated that the Fund could save $2,000 per month by using this hardware and customized software.

The Fund, on behalf of all SEIU Funds, entered into a Software Solutions Finance Agreement ("Finance Agreement") with Defendants, which became effective on August 23, 2017. By signing the Finance Agreement, the Fund agreed to "all

2

applicable terms and conditions," which included separate hyperlinked documents, including a Software Solutions Agreement ("SSA"), a Professional Services Agreement ("PSA"), and a Maintenance Agreement ("MA").[1] These hyperlinks were accessible to the Fund in Section G of the Finance Agreement, which also stipulated that the Fund would pay monthly payments of $2,815.01 for a 60-month lease of the postage and mailing equipment. Additionally, a Software License Agreement ("SLA") was attached to the SSA via a hyperlink. The SLA also contained a link to another Professional Services Agreement ("OMS-PSA"). Both the SSA and the PSA include forum-selection clauses that grant exclusive jurisdiction in New Haven, Connecticut, while the SLA includes a permissive arbitration clause in the same jurisdiction for matters arising out of the subject matter of that specific document.

Following the Finance Agreement, the parties entered into a Solution Design Agreement ("SDA") (collectively with the Finance Agreement, SSA, PSA, MA, SLA, SDA, OMS-PSA "the Agreement") in January of 2018 detailing the specific terms of the custom software that Defendants were to provide to the Fund. Within the SDA, Defendants included a schedule for the customized software that stipulated the software

---

[1] Although the parties disagree about various issues in their briefs, neither party contends that the hyperlinked documents were not accessible, or that somehow they should be disregarded simply because they were presented in hyperlinked format in the Finance Agreement.

and hardware components provided by Defendants would be operational within eight to sixteen weeks of January 3, 2018.

Defendants did not meet the deadlines in the SDA. This prompted the Fund to provide Defendants with a 60-day termination notice. Upon receiving the Fund's termination notice, Defendants immediately stopped providing services to the Fund and sent a "buy-out" letter dated July 17, 2018, asserting that the Agreement is "non-cancelable" and demanding $169,792.66 in termination fees. Defendants also refused to return $20,878.75 that the Fund had deposited into the postage machine.

Based on these events, the Fund sued Defendants for breach of fiduciary duty under ERISA, 29 U.S.C. § 1104(a)(1)(A), breach of contract, and declaratory judgments stating that the early termination fee is non-enforceable and that the Fund had a right to terminate the Agreement. Defendants have moved to dismiss the Fund's complaint under Federal Rules of Civil Procedure 12(b)(3), or alternatively, to transfer venue under 28 U.S.C. §1404(a). Because we grant the motion to transfer, we do not reach the motion to dismiss.

## **LEGAL STANDARD**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer is appropriate if (1) venue is proper in both the transferor and transferee court; (2) transfer

is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *See id.* In ruling on a § 1404(a) motion, "the Court considers the relevant factors in light of all the circumstances of the case, an analysis that necessarily involves a large degree of subtlety and latitude," *Luera v. Godinez*, 2015 WL 1538613, at *2 (N.D. Ill. 2015), and the issue is therefore "committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

However, in cases involving forum-selection clauses, the United States Supreme Court has instructed that "when parties have agreed to a valid forum-selection clause, that clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 64 (2013). Therefore, district courts should ordinarily transfer cases to the forum specified in a forum-selection clause. *Id.*

The Seventh Circuit in "*Atlantic Marine* clarified that '[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways.'" *In re Mathias*, 867 F.3d 727, 731 (7th Cir. 2017). First, the plaintiff's choice of forum merits no weight. *Id.* Second, and relatedly, "a court evaluating a defendant's [Section] 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* Third, to resolve a transfer motion in this context, "a district court may consider arguments about public-interest factors only." *Id.* Because public-interest factors will "rarely defeat a transfer

5

to the contractually chosen forum, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* (internal quotation marks omitted).

Accordingly, a party acting in defiance of a valid forum-selection clause bears a heavy burden "of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Const.,* 571 U.S. at 64. Applying this mandate, the Seventh Circuit has held that:

> a forum selection clause is presumptively valid and enforceable unless (1) [its] incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) [its] enforcement * * * would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 (7th Cir. 2001).

## **DISCUSSION**

Defendants urge the Court to transfer or dismiss the case, arguing that the Agreement contains a valid forum-selection clause designating the District of Connecticut as the forum for resolving disputes arising under their Agreement. The Fund responds that the forum-selection clause is not part of the Agreement because it is contradicted by a later agreement that controls. The Fund alternatively argues that the convenience of the parties outweighs the enforcement of the clause. Finally, The

Fund argues that even if the clause is valid and enforceable, it should not apply to their ERISA claim.[2] The Court addresses each argument.

## I. Whether the Forum-Selection Clause is Part of the Agreement

The validity of a forum-selection clause is a question of federal law. *Nw. Nat'l. Ins. Co. v. Donovan,* 916 F.2d 372, 374 (7th Cir. 1990). However, determining whether a forum-selection clause is part of a contract is a question of state law. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998). The parties do not dispute that Illinois choice-of-law rules dictate that Connecticut law governs the Agreement's interpretation. We, therefore, apply Connecticut law to determine whether the forum-selection clause is part of the Agreement.

Connecticut law requires courts interpreting contracts to construe the Agreement as a whole, including relevant provisions referenced there. *Greenberg v. Greenberg*, 26 Conn. App. 591, 596 (1992). Contracts are construed to give effect to the contracting parties' intent. *Sturman v. Socha*, 191 Conn. 1, 10 (1983). "[I]ntent ... is to be

---

[2] The Fund also argues that the terms of the unsigned agreements, *i.e.* the SSA, PSA and MA, are too vague and indefinite to be enforceable. But this argument contradicts the grounds asserted as the basis for at least two counts in the complaint. Count I alleges a breach of contract and seeks declaratory relief on the grounds that Defendants breached the terms of the PSA, *i.e.* an unsigned document, by failing to cure deficiencies within 60 days of the Fund's advance notice. Similarly, Count III seeks a declaration that the early termination fee is not enforceable on the same grounds. The Fund cannot now contradict allegations that are fundamental to two-thirds of the claims asserted in their complaint. "It is well established that a plaintiff cannot amend the complaint through a response brief." *Foster-Jenkins v. Rogers Auto Grp.*, 2019 WL 4750304, at *2 (N.D. Ill. 2019) (*citing Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011)).

ascertained by a fair and reasonable construction of the written words and ... the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Id.*

"When parties execute a contract that clearly refers to another document," there is an intent to make it part of the agreement "so long as both parties are aware of the terms and conditions of that other document." *Allstate Life Ins. Co. v. BFA Ltd. P'ship*, 287 Conn. 307, 315 (2008). Where two or more meanings may be fairly given to the language in a contract, the language is to be construed against the drafter of the contract. *Sturman v. Socha,* 463 A.2d 527, 532 (1983). Similarly, the language of a contract is typically construed more strongly against the party whose language it is and for whose benefit it was inserted. *Sturman*, 463 A.2d at 532. That said, "a contract must be construed to effectuate the intent of the contracting parties." *Id.* In ascertaining intent, we consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish. *Connecticut Co. v. Division 425, etc., Street, Electric Railway Employees,* 164 A.2d 413, 417 (1960).

On August 23, 2017, the parties executed a Finance Agreement that references three other agreements: (1) the Software Solutions Agreement ("SSA"); (2) the Professional Services Agreement ("PSA"), and; (3) a Maintenance Agreement

8

("MA").³ While the Finance Agreement itself does not contain a forum-selection clause, both the SSA and the PSA contain a clause that designates the District of Connecticut as the parties' chosen forum. The parties dispute whether the forum-selection clauses are part of their Agreement.

The Fund contends that the forum-selection clauses in both the SSA and PSA do not control because they conflict with a fifth agreement: the Software Licensing Agreement ("SLA"), which is referenced in the SSA and contains permissive arbitration and integration provisions but no forum-selection clause. The Fund argues that the terms of the SLA are controlling because the document states it makes up the complete agreement between the parties and supersedes all prior or contemporaneous agreements. The Court disagrees for three reasons.

First, the Fund contracted with Defendants to help them meet their mailing and printing logistical needs. The contract included a hardware component, in which the Fund would lease a mailing and postage machine from Defendants, and a customized software component. The SLA's Integration Clause states that the SLA "supersedes all prior and contemporaneous agreements…*concerning the subject matter* of this Agreement." Response, Ex. C, p.4, Section 11.9.(emphasis added). Given that the SLA

---

³ Although the parties disagree about various issues in their briefs, neither party contends that the hyperlinked documents were not accessible, or that somehow they should be disregarded simply because they were presented in hyperlinked format in the Finance Agreement.

deals with software licensing but does not mention the hardware component of the Agreement, we believe the SLA is part of the contract only to the extent it provides software licensing terms. *Allstate Life Ins.*, 287 Conn. at 317 (*citing Cruthers v. Donahue*, 85 Conn. 629, 631–32 (1912) ("[t]he rule seems so well established that it may be said to be elementary that where, in a contract, reference is made to another writing for a particular specified purpose, such other writing becomes a part of the contract for such specified purpose only.")). Accordingly, we do not believe that the conflicting permissive arbitration provision can override the forum-selection clauses in the SSA and PSA.

Second, the SLA is an agreement with Defendant Neopost alone and does not include Defendant Mailfinance. While it is true, as the Fund contends, that "[a] contract containing a term inconsistent with a term of an earlier contract between the *same parties* is interpreted as including an agreement to rescind the inconsistent term in the earlier contract," *id.* at 319 (emphasis added), the SLA is not an agreement between the same parties; it is missing MailFinance. Thus, it would strain credulity were we to hold that the SLA—an agreement with only one party, i.e., Neopost—supersedes any preceding agreements with a separate party, i.e., MailFinance.

Third, and finally, the Fund sued to enforce the terms of the Agreement. If the ancillary SLA is to govern, then there would be no substantive terms for the Agreement, as those are contained in the Finance Agreement.

Accordingly, the Court finds that the SLA does not control the entire contract because it is merely a software licensing agreement with Neopost, whereas the contract includes both an equipment component, a software component, and an additional party, i.e., MailFinance. Given that the SLA could not control the entire contract, any conflicting provisions there are not part of the Agreement. Because the conflicting arbitration and integration provisions are to be given no effect, the Court finds that the forum-selection clauses in the SSA and PSA are part of the agreement between the parties. We now turn to determine whether the forum-selection clause is enforceable.

## II. Whether the Forum-Selection Clause is Enforceable

In a diversity action, questions on enforcing forum-selection clauses are governed by federal law. *Nw. Nat'l. Ins. Co. v. Donovan,* 916 F.2d 372, 374 (7th Cir. 1990). The Seventh Circuit has held that:

> a forum selection clause is presumptively valid and enforceable unless (1) [its] incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) [its] enforcement * * * would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 (7th Cir. 2001)

First, the Fund does not allege that the clause resulted from fraud, undue influence, or overweening bargaining power. The Fund's complaint admits that the

Agreement was operative, sues for its breach—thereby affirming the contract—and seeks declaratory relief that it was properly terminated.

Second, the Fund does not argue that enforcing the clause would be unjust or unreasonable. A party claiming unreasonableness "bears a heavy burden of showing that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Bombshell Accessories, Inc. v. L.A. Silver, Inc.*, 2011 U.S. Dist. LEXIS 91108, at *11 (N.D. Ill. 2011).

The Fund neither alleges facts nor argues that enforcing the clause would deprive them of their day in court. Rather, they simply argue that the convenience of the parties and witnesses heavily favors keeping the case in Illinois. While that argument may be sufficient under a traditional *forum non conveniens* analysis, that analysis does not apply where a forum-selection clause exists. *AAR Int'l, Inc.*, 250 F.3d at 526 (concluding stricter standards announced in *Bremen* and *Northwestern Int'l* should control *forum non conveniens* analysis where valid forum-selection clause exists). Where a forum-selection clause exists, "a defendant must allege more than the mere chance of inconvenience for third parties." *Bombshell Accessories, Inc.* 2011 U.S. Dist. LEXIS 91108, at *20. And, where a court's refusal to enforce the clause simply "shifts the burden borne by one party's witnesses to another party's witnesses, then third-party inconvenience should play no role in the court's decision as to the enforceability of the clause." *Id.*

12

Third, and finally, the Fund neither alleges nor argues that enforcing the clause would contravene Illinois public policy. The Court, therefore, finds that the forum-selection clause is enforceable.

### III. Whether the Forum-Selection Clause Applies to the Fund's ERISA Claim

The Fund next argues that even if the forum-selection clause is valid and enforceable, it should not apply to its ERISA claim alleging a breach of fiduciary duty. The Fund's ERISA claim alleges that Defendants acted as fiduciaries by freezing amounts in their postage account and have breached their fiduciary duty under 29 U.S.C. § 1104(a) by refusing to release those amounts to leverage a settlement payment from the Fund. Because this claim does not originate from the Agreement, the Fund argues that the forum-selection clause should not apply. The Court does not agree.

In *In re Mathias*, the Seventh Circuit held that ERISA's venue provision does not prevent enforcement of a forum-selection clause in an employee benefits plan. The *Mathias* Court reasoned that nothing in ERISA's venue provision "precludes the parties from contractually channeling litigation to a particular federal district." 867 F.3d 727, 733 (7th Cir. 2017). That said, this Court could not find any authority addressing the enforceability of a forum-selection clause in a services agreement (as opposed to an employee benefits plan) negotiated between an ERISA fund and a service provider. But *Mathias* is instructive.

13

Since nothing in ERISA's venue provision precludes the parties from contractually selecting a litigation venue, we believe it would be appropriate for a forum-selection clause in a negotiated services agreement to govern ERISA claims that would not have existed absent a contractual relationship between the parties that is otherwise unrelated to ERISA. Applying this rationale here, we find that the Agreement's forum-selection clause governs the Fund's ERISA claim because that claim would not exist absent the Agreement, which gave rise to a contractual relationship between the parties. *See Fast v. Fast Farrag & Stipsits GmbH*, 2003 WL 1581472, at *2 (N.D. Ill. 2003) (finding Lanham Act count subject to forum-selection clause where claim would not exist without the licensing agreement). Had the parties not signed a contractual agreement, Defendants would have had neither the ability nor the opportunity to allegedly exercise any authority over the Fund's assets. Accordingly, we find that the forum-selection clause governs the Fund's ERISA claim.

## **CONCLUSION**

For the reasons mentioned above, the Court grants Defendants' motion to transfer to the District of Connecticut. It is so ordered.

Dated: January 29, 2020

Charles P. Kocoras
United States District Judge